Filed 12/21/23  P. v. Walz CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E080712 |
| v. | (Super.Ct.No. SCR41000) |
| PHILLIP EDWARD WALZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Gregory S. Tavill, Judge.  Affirmed.

Christopher Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Heather B. Arambarri and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Phillip Edward Walz is serving a sentence of life without the possibility of parole (LWOP) for his conviction of first degree murder. (Pen. Code,[1] § 187.) In January 2023, he filed a motion for an evidence preservation hearing pursuant to section 1203.01 and *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*),[2] seeking to make a record of mitigating evidence connected to his youth. The superior court denied the motion. On appeal, defendant contends the denial of his request for a *Franklin* hearing violates equal protection. Alternatively, he contends he should be granted a *Franklin* hearing pending Senate Bill No. 94's enactment into law. As we explain, we reject his contentions and affirm.

## I. PROCEDURAL BACKGROUND AND FACTS

In April 1983, defendant, who was 20 years old at the time, killed Michael Thomas. Subsequently, a jury convicted him of first degree murder with special circumstances, along with numerous counts of other offenses, and he was sentenced to LWOP. On January 28, 2023, defendant filed a motion for a *Franklin* hearing and for appointment of counsel to assist in the hearing. The superior court denied the motion,

---

[1] All further statutory references are to the Penal Code.

[2] A *Franklin* hearing allows a convict to preserve evidence of youth-related mitigating factors for purposes of a future youthful offender parole hearing pursuant to section 3051. (See *Franklin*, *supra*, 63 Cal.4th 261; see also *In re Cook* (2019) 7 Cal.5th 439, 448-459.) Juvenile offenders (i.e., those under 18 when they offended) who are sentenced to LWOP are eventually entitled to a section 3051 hearing; youthful offenders (i.e., those between 18 and 25 when they offended) who are sentenced to LWOP are not. (§ 3051, subds. (a)(1), (b), (h).)

holding defendant was "not eligible for Youth Offender parole[, nor] entitled to the expanded evidentiary preservation procedures contemplated by *Franklin*."

## II. DISCUSSION

Defendant contends his "rights to equal protection under the Fourteenth Amendment of the United States Constitution and under article I, section 7 of the California Constitution, require that he be granted a *Franklin* hearing." He concedes this court has rejected this same contention in *People v. Ngo* (2023) 89 Cal.App.5th 116 (*Ngo*), review granted May 17, 2023, S279458. Nonetheless, he argues "the legal landscape has changed since this Court issued its *Ngo* decision" because (1) that decision is on review before the California Supreme Court, (2) there is a split of authority regarding the merits of the argument he is raising (*Ngo*, *supra*, 89 Cal.App.5th 116 [section 3051's distinction between youthful offenders with LWOP and non-LWOP sentences does not violate equal protection.]; *People v. Hardin* (2023) 84 Cal.App.5th 273, 279, 291, review granted Jan. 11, 2023, S277487 [section 3051's distinction between youthful offenders with LWOP and non-LWOP sentences violates equal protection]), and (3) it is reasonably probable that Senate Bill No. 94 (2023–2024 Reg. Sess.) § 3, as amended March 23, 2023, will pass and create section 1172.5 to allow certain prisoners, including defendant, the right to a resentencing hearing even though they were originally sentenced to LWOP. While mindful of the ever-changing legal landscape, we adhere to the reasoning in *Ngo*.

In *Ngo*, we found "several rational bases for the unequal treatment." (*Ngo*, *supra*, 89 Cal.App.5th at p. 123.) "For one thing, section 3051 was enacted in response to

3

[*People v*.] *Caballero* [(2012) 55 Cal.4th 262 (*Caballero*)]. In *Caballero*, the Supreme Court called for 'legislation establishing a parole eligibility mechanism that provides a defendant serving a de facto life sentence without possibility of parole for nonhomicide crimes that he or she committed as a juvenile with the opportunity to obtain release on a showing of rehabilitation and maturity.' [Citation.] It did not call for such a mechanism for any defendants—whether juvenile, youthful, or otherwise—serving a de jure LWOP sentence. The Legislature could rationally limit its response accordingly.

"For another, section 3051 provides for a youthful offender parole hearing. A youthful offender sentenced to LWOP is not entitled to parole at all. Just like all other adult offenders convicted of murder with special circumstances, a youthful offender convicted of murder with special circumstances must actually spend the rest of his or her life in prison.

"If any further justification is needed, we find it in the difference in culpability. A person guilty of murder with special circumstances is the worst of the worst. This is the most heinous crime known to our Penal Code, and one of the few crimes subject to the death penalty in California. [Citations.]" (*Ngo*, *supra*, 89 Cal.App.5th at p. 123.)

We also noted that "a long line of cases have rejected the equal protection claim defendant makes here"; *Hardin*, *supra*, 84 Cal.App.5th 273 (which defendant primarily relies upon) was the sole outlier. (*Ngo*, *supra*, 89 Cal.App.5th at p. 124, and cases cited.) We found *Hardin's* reasoning flawed in that, (1) it incorrectly considered section 3051 not to be a sentencing statute; (2) it incorrectly limited the "'rational basis'" inquiry to the purposes of the challenged law; (3) it incorrectly required a perfect fit between means and

4

ends; and (4) it incorrectly overlooked the existence of a rational basis for distinguishing between youthful offenders with de jure LWOP sentences and youthful offenders with de facto LWOP sentences (such as 50 years to life).  (*Ngo*, at pp. 124-126.)

Regarding the differential treatment of juvenile offenders with LWOP sentences, the obvious rational basis is age.  "[B]oth the United States Supreme Court and our high court have repeatedly found the bright line drawn between juveniles and nonjuveniles to be a rational one when it comes to criminal sentencing.  [Citations.]"  (*People v. Jackson* (2021) 61 Cal.App.5th 189, 196-197.)  Accordingly, the distinction that section 3051 draws between juvenile offenders with LWOP sentences and youthful offenders with LWOP sentences has repeatedly been upheld.  (*Id*. at pp. 196-198; accord, *People v. Bolanos* (2023) 87 Cal.App.5th 1069, 1079, review granted Apr. 12, 2023, S278803; *People v. Sands* (2021) 70 Cal.App.5th 193, 204-205; *In re Murray* (2021) 68 Cal.App.5th 456, 463-465; *People v. Acosta* (2021) 60 Cal.App.5th 769, 779-781.)

Notwithstanding the above, defendant invites this court to reconsider *Ngo* based on Senate Bill No. 94.  We decline the invitation.  As respondent aptly notes, it is inappropriate for us to rely on "proposed" legislation as a basis for reconsidering our prior decision.  (*Ngo*, *supra*, 89 Cal.App.5th at p. 129 ["Almost any statute could be amended—or a new one enacted—so as to provide almost anything"].)  To do so requires us to accept defendant's assumption of the new legislation's language.  What if Senate Bill No. 94 does not pass?  What if the new legislation's language differs from defendant's assumption?  "The ripeness requirement . . . 'prevents courts from issuing purely advisory opinions, or considering a hypothetical state of facts in order to give

5

general guidance rather than to resolve a specific legal dispute.' [Citation.] In other words, a controversy is not ripe until '"the facts have sufficiently congealed to permit an intelligent and useful decision to be made." [Citation.]' [Citation.]" (*People v. Garcia* (2018) 30 Cal.App.5th 316, 328.)

## III.  DISPOSITION

The order appealed from is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
        J.

We concur:

RAMIREZ
    P. J.

MENETREZ
    J.